UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDAL ALONZO D., <br>     Plaintiff, <br> v. <br> ANDREW SAUL, <br> Commissioner of Social Security, <br>     Defendant. | No. EDCV 20-1727 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff[1] filed this action on August 26, 2020. The parties have filed a Joint Stipulation that addressed the disputed issue. The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 13.)

# I.
# PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income benefits on June 22, 2017, and alleged an onset date of March 21, 2017. Administrative Record ("AR") 15. The application was denied initially and upon reconsideration. AR 15, 64, 93. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On January 16, 2020, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 29-46. On March 3, 2020, the ALJ issued a decision denying benefits. AR 12-24. On August 4, 2020, the Appeals Council denied review. AR 1-5. This action followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of schizophrenia and obsessive-compulsive disorder. AR 17. Plaintiff had the residual functional capacity to perform work with the following restrictions: Plaintiff was limited to simple and routine tasks with occasional superficial interactions with coworkers and no public contact. AR 19. Plaintiff did not have past relevant work. AR 23. The ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such as industrial cleaner, packer, and room cleaner. AR 23-24.

## C. Subjective Allegations

In assessing a claimant's subjective allegations, the ALJ conducts a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ determines whether the claimant presented objective medical evidence of an

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 20.

Second, when, as here, the record does not contain evidence of malingering, the ALJ must give specific, clear and convincing reasons for discounting the claimant's subjective allegations. *Vasquez*, 572 F.3d at 591. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence and other evidence in the record. AR 20. An ALJ may not rely exclusively on a lack of objective medical evidence supporting the severity of the alleged symptoms to discount Plaintiff's subjective allegations. *See Rollins* v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008) (distinguishing treatment of excess symptom testimony).

The ALJ discounted Plaintiff's subjective statements as inconsistent with the objective medical evidence, which documented minimal and conservative treatment after the initial psychiatric hospitalization in March 2017 and improvement in symptoms with treatment without side effects. AR 20.

The ALJ's reasons for discounting Plaintiff's allegations are not supported by substantial evidence. While the ALJ is correct that Plaintiff is treated with medications and his psychotic symptoms improved, the medical records consistently report that Plaintiff does not leave the house alone except to attend a doctor's appointment or go to the store with a parent. He has also consistently displayed obsessive compulsive disorder symptoms such as excessive hand washing and closing doors with his feet to avoid germs from touching the door handle. The treating psychiatrist suggested that Plaintiff seek vocational rehabilitation and potential work on a part time basis. However, there is no indication that Plaintiff is yet capable of work outside the home on a full time

basis. *See Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (requiring ALJ to evaluate claimant's ability to work on sustained basis).

Plaintiff was admitted on a 5150 hold during March 17-25, 2017.[4] He had not eaten or had anything to drink for days. He appeared to be psychotic, tangential, and responding to internal stimuli. AR 267, 370, 500-06. He had graduated from high school ten years earlier. Since then, he had not worked or done any household chores, and rarely went outside. AR 270, 370. He appeared thin and cachectic. AR 270-71, 475. He minimized the severity of his mental illness. AR 512-13.

After days of treatment that included psychotropic medications, Plaintiff ate well, slept well, denied hallucinations, expressed no delusions, and was able to perform activities of daily living. His thought processes were logical and linear. AR 267, 270. At discharge, he was calm and cooperative with good eye contact, normal speech and intact cognition. "I feel good." AR 268. He was discharged to regular activity, medications, and follow up psychiatric care. AR 268-69, 286.

On April 5, 2017, Plaintiff's behavior was guarded, odd, anxious and fidgety. He made loose associations, his intellectual functioning was below average, he had difficulty understanding and responding to questions, and he had poor focus. AR 366, 369. Plaintiff had not left the house or socialized with friends for the past year. AR 366.

On April 20, 2017, Plaintiff reported that, without medication, he has irritability, anger and low frustration tolerance. AR 297. His mental status examination was within normal limits, his behavior was quiet, and his insight and judgment were fair. Plaintiff was diagnosed with unspecified psychosis and unspecified bipolar disorder. He was prescribed medication. AR 298. On May 18, 2017, Plaintiff reported that the medication regime was working without side effects. Plaintiff was alert, coherent,

---

[4] "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, [designated persons] may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation." Cal. Welf. & Inst. Code § 5150.

cooperative and did not appear in distress. He had limited affect and an euthymic mood. AR 295-96.

On June 15, 2017, Plaintiff reported that he is eating, his mood is better and he does not talk to himself as much. He continues to hear voices. His mother reported that he washes his hands 20 times per day for about 1-2 hours, and closes doors only with his feet. Plaintiff explained that he worries about germs. He will not touch a trash can. AR 363. On mental status examination, Plaintiff was withdrawn, his speech was soft, his affect was blunt and he had auditory hallucinations. He had loose association and persecutory/paranoid thought content. He was diagnosed with schizoaffective disorder – bipolar type and obsessive compulsive disorder with poor insight. AR 364. On June 19, 2017, Plaintiff went to the emergency room. He felt nervous, had been unable to sleep for a day and complained of white bumps on both hands. He was prescribed medication. AR 565, 568. On June 30, 2017, Plaintiff presented again at the emergency room with inability to sleep for two days. When trying to sleep, Plaintiff had difficulty breathing and tremors. Plaintiff had tremors on examination and was restarted on medication. AR 610, 612, 615. Plaintiff's mother reported the situation to his psychiatrist. She was concerned that he walks and paces at night, and sleeps during the day. The psychiatrist explained the high medication levels and the need for realistic expectations. There is no cure for schizoaffective disorder and the goal is to minimize symptoms with medication without compromising his overall health. AR 674. On August 3, 2017, Plaintiff reported that he was taking his medications and did not have psychotic symptoms. He was eating and sleeping well. On mental status examination, Plaintiff's behavior was withdrawn, his speech was soft, his affect was blunted, his thought content was somatic, his concentration was mildly impaired, his insight was poor and his judgment was fair. AR 362. His medications were adjusted. AR 361. In October 2017, Plaintiff's symptoms had improved. He had been denied disability. He was given a referral to vocational rehabilitation. His insight and judgment were poor. AR 445. In December 2017, Plaintiff's mother agreed that he did not show

psychotic symptoms but reported that he continues to stay in his room. AR 444. Plaintiff did not go to vocational therapy. AR 440.

On February 20, 2018, Plaintiff underwent a psychiatric evaluation by Dr. Belen. AR 401-05. Plaintiff reported that he stayed in his room. AR 402. Plaintiff's mood was depressed, passive and barely responsive. His affect was constricted. His thought processes were linear and goal oriented without loose association. His thought content did not contain hallucinations or delusions. His memory, concentration and abstract thinking were within normal limits. AR 403. Plaintiff was diagnosed with mood disorder and personality disorder. His Global Assessment of Functioning (GAF) score was 55.[5] AR 404.

Dr. Belen observed that Plaintiff was adhering to his treatment and appeared to be stable. AR 405. Dr. Belen opined that Plaintiff would have mild limitations performing simple and repetitive tasks; moderate limitations in performing work activities on a consistent basis without special or additional supervision; moderate limitations in completing a normal workday and workweek due to his mental condition; moderate limitations in accepting instructions from supervisors and interacting with coworkers and the public; and moderate difficulty in being able to handle the stresses, changes and demands of employment. AR 404.

On August 27, 2019, Plaintiff reported eating and sleeping well, and taking his medications without side effects. Plaintiff reported that his obsessive compulsive disorder symptoms remained unchanged (e.g., closing doors with his feet, checking whether doors are locked multiple times per day). On mental status examination, Plaintiff's behavior was withdrawn, his speech was soft, his mood was flat/blunted, his thought process was loose, and his insight and judgment were fair. His memory was within normal limits. He was advised to keep of journal of his compulsions. AR 431.

---

[5] A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000).

Plaintiff's mental status examination varied to some extent but was largely unchanged during the period March 2018 through August 2019 except that his insight and judgment were often poor. AR 432-43. In September 2018, Plaintiff reported hand washing and frequently closing doors with his feet. AR 440. In October 2018, the provider was concerned that Plaintiff required a written medication schedule so as not to get confused. AR 438. On June 11, 2019, his provider discussed the possibility of working part time. AR 432. On December 10, 2019, Plaintiff reported that he wanted to start looking for work and possibly go to welding school. His mental status examination was within normal limits, and his insight and judgment were fair. AR 675, 705.

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler*, 775 F.3d at 1099. When there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1101. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. Here, remand is appropriate for the ALJ to reconsider Plaintiff's allegations in light of the record.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

DATED: July 8, 2021

_____
ALICIA G. ROSENBERG
United States Magistrate Judge